IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| PAMELA TEAL, | : |
| | : |
| Plaintiff, | : |
| | : CIVIL ACTION FILE NO.: |
| v. | : 2:09-CV-0187-RWS-SSC |
| | : |
| CITY OF DAHLONEGA, GEORGIA | : |
| and BILL LEWIS, Individually and | : |
| in His Official Capacity as City | : |
| Manager for the City of Dahlonega, | : |
| Georgia, | : |
| | : |
| Defendants. | : |

# ORDER

This case is before the court on Defendants' Motion for Protective Order [Doc. 45].

## I. Relevant Procedural History and Factual Background

On October 27, 2009, Plaintiff, who was formerly employed by the City of Dahlonega, filed a complaint [Doc. 1] alleging that Defendant City of Dahlonega ("Defendant City") discriminated against and discharged her because of her gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Count One); paid her less than a male employee performing substantially similar work in violation of the Equal Pay Act of 1963, 29 U.S.C. § 206(d) and the Fair Labor Standards Act of 1928, 29 U.S.C. § 201 *et seq.* (Count Two); and retaliated against her for filing a charge of discrimination

1

with the United States Equal Employment Opportunity Commission ("EEOC") in violation of Title VII and 42 U.S.C. § 1981[1] ("§ 1981") (Count Three).  Plaintiff later filed an amended complaint [Doc. 5] and added Bill A. Lewis, the City Manager for the City of Dahlonega, as a defendant.   In her amended complaint, Plaintiff asserts Title VII claims for gender discrimination against Defendant City of Dahlonega (Count One); Equal Pay Act claims against both Defendants (Count Two); Title VII, § 1981 and Equal Pay Act retaliation claims against both Defendants (Count Three)[2]; a claim of denial of Equal Protection based on gender pursuant to 42 U.S.C. § 1983 against both Defendants (Count Four); and a punitive damages claim against both Defendants (Count Five).

On August 24, 2010, Plaintiff took the deposition of William R. Scott, who was a member of the City of Dahlonega's City Council during Plaintiff's employment and who voted to terminate Plaintiff's employment. (See Doc. 36; see also Scott Dep. at 9, 12-13).  Mr. Scott is no longer a member of the City Council. (Scott Dep. at 8-9).  During Mr. Scott's deposition, Plaintiff's counsel questioned Mr. Scott about the substance of a conversation Mr. Scott had with defense counsel, Ms. Auffant and Mr. Friedman, the day before his deposition.  (Id. at 30-

---

[1] The court notes that, although Plaintiff asserts that she brings her retaliation claim pursuant to § 1981,  "[s]ection 1981 was enacted to prevent discrimination based on race, not discrimination based on sex." Anderson v. Dunbar Armored, Inc., 678 F. Supp. 2d 1280, 1306 n. 16 (N.D. Ga.) (recommending summary judgment for defendant on plaintiffs' § 1981 sex discrimination and retaliation claims because § 1981 does not prohibit discrimination based on sex), adopted by 678 F. Supp. 2d 1280 at 1289-90 (N.D. Ga. 2009) .

[2] Plaintiff again asserts a § 1981 retaliation claim, though she has not asserted a claim for race discrimination or a claim that she made a complaint in opposition to discrimination on the basis of race.

31).  Specifically, Plaintiff's counsel, Mr. Marlowe, asked Mr. Scott "What did y'all discuss during that conversation?"  (Id. at 30).  Defendant City's counsel, Ms. Auffant, objected and stated, "I'm not going to let him testify about his conversations with me . . . [b]ecause it's protected by the attorney-client privilege."  (Id.).  Plaintiff's counsel then asked, "It's your position that you represent Mr. Scott, a former city employee?"  Ms. Auffant responded:

> He is a former city council member, and I'm not going to let him testify about his conversations with me.  He's a former management employee–I mean, not an employee, but a former city council member, and in that capacity, I am not going to let him testify about his conversations with me.

(Id.).

After that exchange, the court then conducted a teleconference with counsel in an effort to resolve the dispute and instructed Defendants to file a motion for protective order.  (See Doc. 36).  Defendants have now filed that motion [Doc. 45], and Plaintiff has filed a response [Doc. 46].

## II.  Discussion

Defendants move for a protective order "precluding Plaintiff from questioning former City Councilman Bill Scott about his conversations with defense counsel in preparation for his deposition." (Doc. 45, Def. Mot. at 1).  They argue that "communications between defense counsel and former City Councilman Bill Scott . . . are protected from disclosure by the attorney-client privilege and work product doctrine." (Doc. 45, Def. Br. at 1).  Plaintiff responds that communications between defense counsel and Mr. Scott that occurred after

3

he was no longer a City Council member are not protected by the attorney-client privilege and any work product protection either has been waived by counsel's disclosure of mental impressions in a non-privileged context or has not been shown to apply in accordance with the requirements of Fed. R. Civ. P. 26 (a)(5)(A). (Doc. 46, Pl. Br. at 4-15).

A. **Standards Applicable to Protective Orders**

>   Fed. R. Civ. P. 26(b) provides in relevant part:

>   Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(c) permits "[a] party or any person from whom discovery is sought" to move for a protective order, and it authorizes the court to issue such an order, upon a showing of good cause, "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense . . . ." A protective order may forbid the disclosure or discovery sought in whole or in part, or place limits on the time, place or method of discovery, among other things. Id.

**B.     Issues Presented**

Based on the parties' briefs and the positions they asserted during the August 24, 2010 telephone conference, it appears that the issues presented are whether communications between Mr. Scott and counsel for the City during the period while Mr. Scott was a City Council member are privileged; whether communications between Mr. Scott and counsel for the City after Mr. Scott was no longer a member of the City Council, including communications during the conference on August 23, 2010 in preparation for Mr. Scott's deposition, are privileged; whether any privilege has been waived; and whether any portions of the communications between Mr. Scott and counsel for the City on August 23, 2010 are nevertheless protected from disclosure as attorney "work-product."

**C.     Does the Attorney-Client Privilege Protect Communications Between Mr. Scott and Counsel for the City?**

**1.     Applicable Standards**

" 'The attorney-client privilege exists to protect confidential communications between client and lawyer made for the purpose of securing legal advice.' " In re Grand Jury Matter No. 91-01386, 969 F.2d 995, 997 (11th Cir. 1992) (quoting In re Slaughter, 694 F.2d 1258, 1260 (11th Cir. 1982)). "The protection afforded by the attorney-client privilege promotes full and frank communications between an attorney and client in order to facilitate the maximum effectiveness of the attorney's representation." Id. (citing Upjohn v. United States, 449 U.S. 383, 389 (1981)). One claiming the privilege must make the following showing to support

the claim:

> (1) the asserted holder of the privilege is or sought to become a client;
>
> (2) the person to whom the communication was made (a) is [the] member of a bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;
>
> (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and
>
> (4) the privilege has been (a) claimed and (b) not waived by the client.

United States v. Noriega, 917 F.2d 1543, 1550 (11th Cir.) (original formatting altered), cert. denied, 498 U.S. 976 (1990). "The burden is on the party claiming the privilege to establish those facts that constitute the essential elements of the privileged relationship." Abdallah v. Coca-Cola Co., No. 1:98-CV-3679-RWS, 2000 U.S. Dist. LEXIS 21025, at *10 (N.D. Ga. Jan. 25, 2000) (citing Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 470 (S.D. N.Y. 1993)).

### 2. Communications Between Defense Counsel and Mr. Scott While He Was a City Council Member

Defendants contend that "communications between Mr. Scott and defense counsel for purposes of securing legal advice in connection with Plaintiff's employment and the termination thereof are protected from disclosure by the attorney-client privilege" because "Mr. Scott was a member of the City Council at the time the City retained defense counsel to provide legal advice," and also, "Mr. Scott and the other members of the City Council who voted to terminate Plaintiff's

employment obviously faced the potential of claims against them in their individual capacity under 42 U.S.C. § 1983 and state tort laws." (Doc. 45, Def. Br. at 5-6). Moreover, Defendants argue, that privilege has not been waived. (Id. at 6-8).

In her brief, Plaintiff focuses on the communications between Mr. Scott and defense counsel on the day before Mr. Scott's deposition, when he was no longer a member of City Council. The court notes, however, that during the teleconference with counsel, Plaintiff's counsel acknowledged that communications between counsel for the City and Mr. Scott during Mr. Scott's tenure as a City Council member are protected by attorney-client privilege, but asserted that "to the extent that Mr. Scott and Ms. Auffant discussed yesterday any matters that may have been protected at one time by the attorney-client privilege, that privilege would have been waived by their discussions yesterday." (Scott Dep. at 73-74). It thus is not clear whether Plaintiff's counsel seeks to inquire into the substance of communications counsel for the City may have had with Mr. Scott[3] when he was a member of City Council, on the theory that any attorney-client privilege has been waived, but the court will address that possibility as well in an abundance of caution.

The court finds that Defendants have shown that any communications

---

[3] Ms. Auffant made clear that the only conversation she ever had with Mr. Scott took place on August 23, 2010 (Scott Dep. at 31), but that other defense counsel met with Mr. Scott while he was a member of City Council and at that time, Mr. Scott "was exposed to privileged and confidential information" (Doc. 45, Def. Br. at 11).

between Mr. Scott and defense counsel during his tenure as a City Council member are protected by attorney-client privilege. Furthermore, the court finds that Defendants have not waived that privilege even if Mr. Scott discussed those communications with defense counsel after he was no longer a member of the City Council. See, e.g., Gioe v. AT&T, Inc., No. CV 09-4545 (LDW) (AKT), 2010 U.S. Dist. LEXIS 99066, at *3 (E.D. N.Y. Sept. 20, 2010) ("The attorney-client privilege continues to protect from disclosure privileged communications occurring during the period of employment, even after the employment ends." (citing cases)); Infosystems, Inc. v. Ceridian Corp., 197 F.R.D. 303, 306 (E.D. Mich. 2000) ("[P]rivileged communications which occur during the period of employment do not lose their protection when the employee leaves the client corporation."); Peralta v. Cendant Corp., 190 F.R.D. 38, 41 (D. Conn. 1999) (concluding "that any privileged information obtained by [the witness] while an employee of Cendant, including any information conveyed by counsel during that period, remains privileged upon the termination of her employment"). The court finds that continued application of the privilege after an employee—or in this case, member of Defendant City's City Council—no longer serves in that capacity, furthers the value recognized in Upjohn "that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client," or, as in this case, "the provider of information" needed by the lawyer to give sound legal advice or advocacy. 449 U.S. at 389-91. Accordingly, Defendants' motion for protective order is **GRANTED** to the extent that it seeks to prevent

disclosure of communications between Mr. Scott and defense counsel while Mr. Scott was a City Council member.

### 3. Communications Between Defense Counsel and Mr. Scott After He Was No Longer a City Council Member

Defendants argue that the attorney-client privilege also prevents the disclosure of communications between Mr. Scott and defense counsel prior to his deposition because Mr. Scott "was a member of the decisionmaking body that took action which Plaintiff challenges in this action as both discriminatory and retaliatory [and a]s such, not only could he be exposed to liability but his actions could create exposure for the City as well." (Doc. 45, Def. Br. at 10). Defendants also argue that Mr. Scott should be considered an "organizational party," whose communications with counsel are privileged, because he was a member of the City Council and voted to terminate Plaintiff's employment; in that capacity he "met with defense counsel and was exposed to privileged and confidential information"; and "Defendants assume Plaintiff will attempt to both use Mr. Scott's statements as admissions against the City and to use his actions to impute liability to the City." (Id. at 10-12).

As discussed *supra*, the court finds that, to the extent that Mr. Scott and defense counsel discussed, on August 23, 2010, communications Mr. Scott and counsel had during his tenure as a City Council member, those communications remain privileged. Plaintiff has offered no authority to support a contrary finding. However, to the extent that Mr. Scott and defense counsel had any discussions

9

concerning matters beyond those within the scope of the privileged communications that occurred while Mr. Scott was a member of City Council, Defendants have not shown that the attorney-client privilege prevents the disclosure of those communications. Therefore, to the extent that Defendants seek protection from disclosure of such communications based on attorney-client privilege, their motion is **DENIED**.

Defendants have not shown that an attorney-client relationship existed between Mr. Scott and defense counsel during their conversations on August 23, 2010, after Mr. Scott was no longer a City Council member, or that such a privilege prevents the disclosure of all communication between Mr. Scott and defense counsel after he was no longer a City Council member. For example, if counsel advised Mr. Scott of additional information concerning the case unknown to Scott during his tenure, or if counsel instructed Mr. Scott how to answer questions, such communications would not be protected by the attorney-client privilege. See, e.g., Gioe, 2010 U.S. Dist. LEXIS 99066, at *7 (explaining that "[i]f, for example, counsel has advised or informed [Mr. Done] of something he did not know, including facts developed during the litigation, such as testimony of other witnesses, or any other facts which might influence a witness to conf[o]rm or adjust her testimony to such information, or how a question should be handled, such communications are not privileged and, therefore, must be produced" (internal quotations omitted)); see also Peralta, 190 F.R.D. at 41.

**D.    Are Communications Between Counsel for the City and Mr. Scott**

**Protected from Disclosure by the Work Product Doctrine/Privilege?[4]**

**1.     Applicable Standards**

"The attorney work product privilege generally protects documents prepared by an attorney in anticipation of litigation." Miccosukee Tribe of Indians of Fla. v. United States, 516 F.3d 1235, 1263 (11th Cir. 2008) (citing Hickman v. Taylor, 329 U.S. 495, 509-10 (1947)). "The overall purpose of the work-product privilege is to protect an attorney's thoughts, mental impressions, opinions, and strategies." Tillotson Corp. v. Shijiazhaung Hongray Plastic Prods., 244 F.R.D. 683, 692 (N.D. Ga. 2007) (citing Fed. R. Civ. P. 26(b)(3) and Hickman, 329 U.S. at 511); see also Fed. R. Civ. P. 26(b)(3)(A) (providing in relevant part, "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)"). Fed. R. Civ. P. 26(b)(3)(B) provides, "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the

---

[4] The terms "work product doctrine" and "work product privilege" are used interchangeably in this Order. While the parties have primarily used the former term, the Supreme Court and courts within the Eleventh Circuit appear primarily to use the latter. See, e.g., F.T.C. v. Grolier, Inc., 462 U.S. 19, 24-27 (1983) (referring to "a qualified immunity from discovery for the 'work product of the lawyer,'" "the work-product privilege" and the "immunity" accorded to attorney work-product materials by Fed. R. Civ. P.26(b)(3)); cases cited in the body of this Order, *infra.* But see Tambourine Comercio Internacional SA v. Solowsky, 312 F. App'x 263, 283-84 (11th Cir. 2009) (unpublished decision). It is clear that the "privilege" for attorney work product is qualified, however. See United States v. Nobles, 422 U.S. 225, 237-38 (1975) (explaining that the privilege for materials "prepared by an attorney 'acting for his client in anticipation of litigation'" is "qualified"); see also 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2023 (3d ed. 2010) ("Certainly it is now clear that work-product materials are not beyond the scope of discovery on the ground that they are 'privileged.'").

litigation." "While Rule 26(b)(3)(A) addresses only 'documents and tangible things,' courts have generally recognized that questions seeking mental impressions and legal theories would still be impermissible." Byrd v. Wal-Mart Transp., LLC, No. CV609-014, 2009 U.S. Dist. LEXIS 87356, at *5 (S.D. Ga. Sept. 23, 2009) (citing cases). "The party asserting a work-product privilege has the burden to prove that the document is work-product." Tampa Bay Water v. HDR Eng'g, Inc., No. 8:08-cv-2446-T-27TBM, 2010 U.S. Dist. LEXIS 95624, at *4 (M.D. Fla. Aug. 26, 2010).

2. **The Instant Case**

Defendants argue that "[i]n addition to the attorney-client privilege, the communications at issue are protected from disclosure by the work product doctrine." (Doc. 45, Def. Br. at 12). Quoting Rule 26(b)(3)(B), Defendants assert that " 'the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.' " (Doc. 45, Def. Br. at 12). Citing several out-of-circuit cases, Defendants argue that "[c]ourts have consistently held that the work product doctrine protects aspects of deposition preparation from disclosure." (Id. at 12-13).

The court finds that, to the extent that Plaintiff seeks testimony from Mr. Scott about his August 23, 2010 meeting with defense counsel that would reveal "the mental impressions, conclusions, opinions, or legal theories of [defense counsel] concerning the litigation," that information is protected by the work product privilege. See, e.g., Peralta, 190 F.R.D. at 42 (finding that

12

communications between a former employee and counsel in preparation for a deposition protected as work product if the communications included counsel's conclusions, opinions or legal theories); see also Barrett Indus. Trucks, Inc. v. Old Republic Ins. Co., 129 F.R.D. 515, 518-19 (N.D. Ill. 1990) (noting that Rule 26(b)(3) "also operates to circumscribe the scope of depositions upon oral examination," and that "a deponent in the course of a deposition may not be asked questions that would reveal expressly his or his lawyer's mental impressions, conclusions, opinions, or legal theories concerning the instant litigation" (internal quotation omitted)).

Plaintiff appears to argue, however, that defense counsel's communications with Mr. Scott after he was no longer a City Council member are not protected by the work product privilege because any such privilege was waived. (Doc. 46, Pl. Br. at 14). Plaintiff cites Clark Equipment Company v. Lift Parts Manufacturing Co., Inc., No. 82 C 4585, 1985 U.S. Dist. LEXIS 15457, at *15 (N.D. Ill. Sept. 30, 1985) for the proposition that "the court in *Clark Equipment* dismissed out of hand the notion that the work-product doctrine could be used to shield pre-deposition communications with a non-party, former employee." (Doc. 46, Pl. Br. at 14).

In Clark, the court found that counsel's conversations with a former employee were not protected by attorney-client privilege and explained further:

> Clark's belated assertion of work product privilege also misses the mark. If counsel, in discussions with third parties, reveals his mental impressions, etc. to such third parties, any claim of work product privilege is waived by such non-privileged disclosure.

13

Clark, 1985 U.S. Dist. LEXIS 15457, at *15.  The court finds that Clark is not persuasive authority on the issue of whether counsel's August 23, 2010 communications with Mr. Scott are protected as work product or whether that protection has been waived.  " '[B]ecause the work product privilege looks to the vitality of the adversary system rather than simply seeking to preserve confidentiality, it is not automatically waived by the disclosure to a third party.' " Fojtasek v. NCL (Bahamas) LTD, 262 F.R.D. 650, 653-54 (S.D. Fla. 2009) (quoting In re Grand Jury Subpoena, 220 F.3d 406, 409 (5th Cir. 2000)).  Rather, "[w]ork-product protection is waived when protected materials are disclosed in a way that 'substantially increases the opportunity for potential adversaries to obtain the information.' " Stern v. O'Quinn, 253 F.R.D. 663, 681 (S.D. Fla. 2008) (quoting Niagara v. Mohawk Power Corp. v. Stone & Webster Eng'g Corp., 125 F.R.D. 578, 587 (N.D. N.Y. 1989)); see also Peacock v. Merrill, No. CA 05-0377-BH-C, 2008 U.S. Dist. LEXIS 24104, at *15 (S.D. Ala. Mar. 18, 2008) ("Unlike the attorney-client privilege, the work product privilege is not necessarily waived by disclosure to any third party; rather, the courts generally find a waiver of the work product privilege only if the disclosure substantially increases the opportunity for potential adversaries to obtain the information." (internal quotations omitted)). Quoting United States v. Gulf Oil Corp., 760 F.2d 292, 295 (Temp. Emer. Ct. App. 1985), the court in Stern explained:

> The purpose of the work product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective

>   trial preparation . . . .   A disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents, should be allowed without waiver of the privilege.

Stern, 253 F.R.D. at 681.

The court finds that, to the extent that counsel for the City revealed their "mental impressions, conclusions, opinions, or legal theories" to Mr. Scott during the August 23, 2010 meeting, counsel did not waive the work product privilege with respect to those communications. Such disclosures to Mr. Scott, a former member of the City Council who voted to terminate Plaintiff, are "not inconsistent with maintaining secrecy against opponents," particularly in light of the fact that there is no evidence that Mr. Scott's position is adversarial to Defendants' or that his interests are aligned with Plaintiff's.

Therefore, Defendants' motion for protective order is **GRANTED** to the extent that Defendants seek to protect from disclosure communications between Mr. Scott and counsel for Defendant City that would reveal defense counsel's "mental impressions, conclusions, opinions, or legal theories." See Fed. R. Civ. P. 26(b)(3)(B).[5]

However, to the extent that Plaintiff seeks to discover underlying facts known by Mr. Scott, regardless of whether Mr. Scott learned those facts from counsel, Plaintiff is entitled to such discovery, to the extent that Mr. Scott's testimony to those facts does not reveal defense counsel's "mental impressions,

---

[5] If Defendants have not already done so, they are required to prepare a privilege log pursuant to Fed. R. Civ. P. 26(5)(a).

conclusions, opinions or legal theories." See Barrett, 129 F.R.D. at 518-19 (explaining that "the work product doctrine does not protect discovery of the underlying facts of a particular dispute, even if a deponent's response to a particular factual question is based upon information provided by counsel" (citations omitted)). Consistent with the court's discussion of attorney-client privilege, *supra,* if counsel provided information to Mr. Scott during the August 23, 2010 meeting that Mr. Scott did not learn during his tenure as City Council member, or counsel gave him advice about how to answer questions or asked him to conform or adjust his testimony to that information, such communications are not protected from disclosure as attorney work product.

### III. Summary

Defendants' Motion for Protective Order [Doc. 45] is **GRANTED in part and DENIED in part** as discussed in the body of this Order

**IT IS SO ORDERED** this 1st day of November, 2010.

*Susan S. Cole*
SUSAN S. COLE
United States Magistrate Judge